UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

IN ADMIRALTY

———————————————————————

WILLIAM E. FRISCH

            Plaintiff,

v.                                  Case No.: 1:20-cv- _____

UNITED STATES OF AMERICA;
OCEAN SHIPHOLDINGS, INC. and
OCEAN SHIPS, INC.

            Defendants.

———————————————————————

## **COMPLAINT**

Plaintiff William E. Frisch ("Plaintiff" or "Bill"), by and through his undersigned attorneys, for his <u>Complaint</u> against Defendant United States of America, Defendant Ocean Shipholdings, Inc. and Defendant Ocean Ships, Inc. states as follows:

<u>INTRODUCTION</u>

1.      This is a case of maritime and admiralty jurisdiction arising when American merchant seaman, William E. Frisch ("Bill"), was thrown across the cabin of a U.S. Navy Military Sealift Command ship, striking a deformity in the cabin wall and causing him serious shoulder injuries.

2.      Set forth below as Image # 1 is a true and accurate picture of the USNS MAURY on which Bill was serving as the First Assistant Engineer when he was injured.



Image # 1

PARTIES, JURISDICTION AND VENUE

3.      Plaintiff William E. Frisch is, and at all times material hereto was, a resident of Town of Westerly, Washington County, State of Rhode Island.

4.      Defendant United States of America has consented to be sued herein by way of the applicable statutes and laws.

5.      At all times material hereto, Defendant Ocean Shipholdings, Inc. ("Ocean Shipholdings") was and is a company organized and existing under the laws of the State of Delaware, having its principal place of business in Houston, Texas and, upon information and belief, was and is doing business in this district.

6.      At all times material hereto, Defendant Ocean Ships, Inc. ("OSI") was and is a company organized and existing under the laws of the State of Delaware, having its principal place of business in Houston, Texas and, upon information and belief, was and is doing business in this district

7.      At all times material hereto, the USNS MAURY ("Vessel") was assigned IMO # 9633484 and was a U.S. Navy Military Sealift Command ship owned by Defendant United States of America.

8.      Upon information and belief, at all times material hereto, the Vessel was manned, equipped, managed, operated, maintained and controlled by the Defendants.

9.      Upon information and belief, Defendant Ocean Shipholdings and Defendant OSI do business in the State of Rhode Island by, among other things, recruiting employees from Rhode Island, regularly paying employees residing in Rhode Island directly, purchasing travel in and out of Rhode Island for its employees and by using the ports located in Rhode Island such that there is general jurisdiction over these Defendants pursuant to Rhode Island's Long Arm Statute.

10.      Upon information and belief, additionally and/or in the alternative, specific jurisdiction exists over Defendant Ocean Shipholdings and Defendant OSI in that a substantial portion of the events pertaining to this lawsuit took place in Rhode Island in that Bill was recruited and hired to work aboard the Vessel while he was in Rhode Island; in that Bill was repatriated to Rhode Island upon being injured; in that Bill received medical care for his injuries in Rhode Island; in that Bill incurred medical charges by medical providers located in Rhode Island which were paid by these Defendants; in that these Defendants paid Bill's maintenance and wages in Rhode Island and in that these Defendants purchased traveled for Bill in and out of Rhode Island in connection with the voyage on which he was injured.

11.      At all times material hereto, Bill was in the employ of the Defendants as a seaman and member of the crew in the service of the Vessel.

12.     At all times material hereto, the officers and crew aboard the Vessel were acting within the course and scope of their employment.

13.     At all times material hereto, Defendant Ocean Shipholdings and Defendant OSI were agents for the United States of America.

14.     In addition and/or in the alternative, upon information and belief, some of the acts and omissions alleged below were done by Defendant Ocean Shipholdings and Defendant OSI on their own behalf and not as agents for Defendant United States of America.

15.     This action is brought pursuant to the provisions of the Suits in Admiralty Act, 46 U.S.C. § 30901 *et seq.*, and/or the Public Vessels Act, 46 U.S.C. § 31101 *et seq.*; the Jones Act, 46 U.S.C. § 30104 *et seq.*; the General Maritime Law, 28 U.S.C. § 1333; Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction," and all other applicable statutes and laws.

16.     Venue is proper in this judicial district pursuant to the provisions of 46 U.S.C. § 30906 and/or 46 U.S.C. § 31104.  Upon information and belief, the Vessel is currently located in international waters outside of the territorial waters of the United States.  Plaintiff resides in this judicial district.

17.     Plaintiff has fulfilled all conditions precedent for filing this action.

<u>FACTS COMMON TO ALL COUNTS</u>

18.     The Vessel is an oceanographic survey ship with an overall length of approximately 353 feet.

4

19.     The Vessel was delivered to Defendant United States of America in February 2016.

20.     At all times material hereto, the Vessel is crewed by civilian mariners.

21.     On or about March 7, 2018, Bill was a seaman assigned to perform work duties as a First Assistant Engineer aboard the Vessel.

22.     At all times material hereto, the Defendants employed Bill as crew aboard the Vessel.

23.     On March 7, 2018, the Defendants agreed to pay Bill remuneration for his work aboard the Vessel.

24.     Alternatively and/or additionally, at all times material hereto, one or all of the Defendants were the Jones Act employer of the crew serving aboard the Vessel, including Bill.

25.     Bill was assigned his own cabin while serving aboard the Vessel.

26.     The cabin assigned to Bill was located at the very top portion of the Vessel.

27.     The cabin assigned to Bill had a bed, a desk and a chair as well as a locker.

28.     The cabin assigned to Bill had a bed structure into which an improperly fitted mattress was inserted.

29.     At all times material hereto, the top of mattress that had been placed into the bed structure was lower than the edge of the structure such that the edges of the bed structure created a wall or barrier around the edge of the mattress.

30.     Image # 2 is not a picture of Bill's cabin, but it depicts an example of a cabin aboard the Vessel showing, among other things, the bed structure equipped with a properly fitted mattress insert.



Image # 2

31.     The cabin assigned to Bill had a defect in its aft wall to the left of the desk consisting of a protruding pipe.

32.     On March 7, 2018, Bill was asleep in his cabin when he awoke at approximately 0400 (Local Time) due to a leg cramp in his lower left leg.

33.     At all times material hereto, the Vessel was making way and underway on a voyage track that had it navigating within a rectangular pattern while it awaited permission to enter port.

34.     At all times material hereto, there was a strong sea swell.

35.     After an unsuccessful attempt at alleviating his leg cramp while lying in bed, Bill maneuvered to get out of his bed to go to the bathroom to fill a hot water bottle for his leg.

36.     In order to get out of his bed, Bill had to maneuver his legs up and over the edge of the bed structure due to the improperly fitted mattress.

37.     At or around the time Bill maneuvered out of his bed and while he was rising to an upright standing position, the Vessel turned suddenly to the port.

38.     The Vessel gave no warning prior to making the sudden port turn.

39.     As the Vessel suddenly turned to port, Bill was thrown approximately 5' to 7' across his cabin striking the pipe protruding from his aft cabin wall causing him a significant shoulder injury (hereinafter "Incident").

40.     There were no hand holds, hand rails or other means of support by which Bill could have used to prevent himself being thrown across his cabin.

41.     At all times material hereto, the Defendants knew and/or reasonably should have known that the insufficient, inadequate and defective mattress and bed structure combination, presented a hazard.

42.     At all times material hereto, the Defendants knew and/or reasonably should have known that the lack of hand holds, hand rails or other means of support in the cabin, presented a hazard.

43.     At all times material hereto, the Defendants knew and/or reasonably should have known that the protruding pipe on the aft wall of Bill's cabin, presented a hazard.

44.     At all times material hereto, the Defendants knew and/or reasonably should have known that the lack of a warning, an announcement or any notice prior to the Vessel turning to port, presented a hazard.

45.     At all times material hereto, the Defendants knew and/or reasonably should have known that turning the Vessel sharply in the prevailing sea conditions, presented a hazard.

46.     After striking the protruding pipe, Bill was in great pain and it took him approximately 15-20 minutes before he could summon help.

47.     Thereafter, Bill received initial medical treatment aboard the Vessel and was then flown to his home in Rhode Island for further medical care including, ultimately, surgery.

48.     Bill has experienced significant pain, suffering and emotional distress as a result of the incident, surgery, treatment and physical therapy he has endured.

49.     All of the medical treatment Bill has undergone subsequent to the Incident and such medical treatment he will undergo in the future was and is causally related to the Incident.

50.     At all times material hereto, the Vessel was on navigable waters.

51.     At all times material hereto, the Defendants knew or should have known of the facts supporting the negligence asserted herein including the defects in the Vessel.

52.     At all times material hereto, Bill was in the scope of his employment as a seaman at the time of the Incident and was performing labors in furtherance of the Defendants' business.

53.     At all times material hereto, Bill exercised due care in the performance of his duties.

COUNT ONE

PLAINTIFF'S UNSEAWORTHINESS CLAIM

54.     Plaintiff reasserts and realleges all of the preceding allegations as if set out in full herein.

55.     At all material times hereto, the Defendants had an absolute, non-delegable duty to provide a seaworthy vessel to Bill, which was reasonably safe and fit for its intended purposes

56.     On or about March 7, 2018, the Defendants breached their warranty to provide Bill with a reasonably safe and fit vessel because of one or more of the following defects:

a.     Vessel and its appurtenances (collectively "Vessel") were in a dangerous, defective and hazardous condition;

b.     Vessel lacked safe and proper appliances;

c.     Vessel lacked a proper mattress and bed structure;

d.     Vessel cabin wall had an unsafe protrusion;

e.     Vessel not properly equipped;

f.     Vessel not properly manned;

g.     Vessel not properly maintained and/or equipped;

h.     Vessel operated in such a way as to unreasonably endanger Plaintiff's safety;

i.     Vessel's cabin space lacked appropriate furnishings, hand holds, hand rails or other means of support;

j.    Vessel lacked safety rules or adequate safety rules and practices including, but not limited to, rules regarding warnings when maneuvering the Vessel in a manner to cause it to heel;

k.    Vessel lacked adequate supervision and instruction and

l.    Other and/or different defects as may be shown at trial.

57.    As a result of these defects, Bill sustained serious personal injuries and/or aggravation of pre-existing physical conditions the full extent of which is not yet known; has in the past required and will in the future require medical treatment, care and attention; will be obliged to expend monies and incur obligations for medical care and attention; has in the past suffered and will in the future continue to suffer agonizing aches, pains and mental anguish; has in the past been, presently is, and will be in the future disabled from performing his usual duties, occupations and leisure activities and has and will in the future suffer a loss of earnings.

58.    The serious personal injuries sustained by Bill were not caused by any fault on his part, but were a direct result of or a reasonably probable consequence of the Vessel's unseaworthiness.

59.    The Vessel's unseaworthiness directly and proximately caused Bill to sustain damages consisting of, among other things, past and future medical expenses, past and future lost wages, loss of future earning capacity, past and future pain, suffering and loss of enjoyment of life, permanent physical impairment and disfigurement.

60.    Bill's serious injuries and related physical limitations are permanent and continuing in nature.

61.     Bill was in the scope of his employment as a seaman at the time he sustained his serious personal injuries.

62.     At all times material hereto, Defendants knew or should have known of the facts supporting the unseaworthiness asserted herein including the defects in the Vessel.

## COUNT TWO

### PLAINTIFF'S JONES ACT NEGLIGENCE CLAIM
### FOR FAILURE TO PROVIDE A REASONABLY SAFE PLACE TO WORK

63.     Plaintiff reasserts and realleges all of the preceding allegations as if set out in full herein.

64.     At all times material hereto, the Defendants owed Bill a duty of reasonable care to provide him with a safe place to work.

65.     The Defendants are vicariously liable for the acts and omissions of the Vessel's officers and crew.

66.     On March 7, 2018, the Defendants breached their duty of reasonable care to provide Bill with a safe place to work because of one or more of the following acts or omissions:

a.     Failing to provide adequate appurtenances, equipment and safety devices;

b.     Failing to supply the Vessel with proper appurtenances and furnishings;

c.     Failures and negligence of fellow employees;

d.     Insufficient crew;

e.     Failing to use due care to provide Bill with a reasonably safe place in which to perform his work;

f.     Adoption of or permitting of unsafe vessel maneuvering procedures;

11

g.      Failing to following good industry practices in connection with vessel maneuvers;

h.      Allowing a dangerous, defective and hazardous conditions to exist;

i.      Allowing an unsafe cabin to exist;

j.      Allowing unsafe cabin furnishings to exist;

k.      Failing to properly instruct, supervise and/or train the crew;

l.      Failing to warn or failing to provide an adequate warning;

m.      Failing to provide hand holds, hand rails or other means of support and

n.      Failures and negligence in other respects as will be shown at trial.

67.      Failing to establish appropriate safety rules and procedures to prevent the Incident from happening.

68.      Defendants knew or should have known of the facts supporting the negligence asserted herein including the defects in the Vessel.

69.      As a result of the Defendants' negligence, Bill sustained serious personal injuries and/or aggravation of pre-existing physical conditions the full extent of which is not yet known; has in the past required and will in the future require medical treatment, care and attention; will be obliged to expend monies and incur obligations for medical care and attention; has in the past suffered and will in the future continue to suffer agonizing aches, pains and mental anguish; has in the past been, presently is, and will be in the future disabled from performing his usual duties, occupations and avocations and has and will in the future suffer a loss of earnings.

70.     Bill's serious injuries were proximately caused by and resulted from the Defendants' breach of their duty of reasonable care to provide Bill with a safe place to work.

71.     Bill was in the scope of his employment as a seaman at the time he sustained his serious personal injuries.

72.     The serious personal injuries Bill sustained were not caused by any fault on his part, but were caused by the Defendants and their agents, servants and/or employees.

73.     As a direct and proximate result of the negligence or fault of the Defendants, Bill sustained damages consisting of, among other things, past and future medical expenses, past and future lost wages, lost earning capacity, past and future pain and suffering and loss of enjoyment of life, permanent physical impairment, and disfigurement.

74.     Bill's injuries are permanent and continuing in nature and he will suffer losses and impairment in the future.

COUNT THREE

MAINTENANCE AND CURE CLAIM

75.     Plaintiff reasserts and realleges all of the preceding allegations as if set out in full herein.

76.     On March 7, 2018, Bill became injured and disabled while in the service of the Vessel.

77.     Upon Bill becoming injured and disabled, Defendants had a non-delegable duty under the General Maritime Law to provide Bill with "maintenance and cure" until Bill reached maximum medical improvement.

78.     "Maintenance" is a daily living allowance that an employer is required to pay a seaman to support the seaman while he is injured and in need of medical treatment.

79.     "Cure" is the payment of medical expenses to treat the seaman's injuries.

80.     At all times material hereto, Defendants were aware of and/or possessed first-hand knowledge of Bill having been injured while in the service of the Vessel.

81.     As a result of the serious personal injuries described above, Bill has incurred and will continue to incur expenses for his maintenance and cure.

82.     To the extent not paid or to the extent not paid in the full amount to which he is entitled, Bill makes claim under the General Maritime Law for maintenance and/or insufficiently provided maintenance and cure until his treating physician(s) unequivocally declares Bill is at maximum medical cure, the full amount of which is owing he seeks to prove at trial.

COUNT FOUR

PLAINTIFF'S WAGE CLAIM

83.     Plaintiff reasserts and realleges all of the preceding allegations as if set out in full herein.

84.     To the extent that Bill is owed any wages for his time served on the Vessel for which he has not received, he demands payment of the same, the full amount of which is owing he seeks to prove at trial.

14

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff William E. Frisch does hereby pray that judgments be entered in his favor awarding him all of the damages to which he is entitled against the Defendant United States of America, Defendant Ocean Shipholdings, Inc. and Defendant Ocean Ships, Inc. (jointly and severally to the extent allowed by applicable law) as follows:

a.      For general damages (including pain and suffering) in an amount to be determined at trial;

b.      For special damages (including future medical expenses, loss of wages, loss of earning capacity, etc.) in an amount to be determined at trial;

c.      For maintenance and cure in an amount to be determined at trial;

d.      For all compensatory damages to which he is entitled;

e.      For costs and interest to the extent allowed by applicable law and

f.      For all other, further and/or different relief at law or in equity as this Court deems just and appropriate.

// Signature Page Follows //

Dated:       March 4, 2020
             Newport, Rhode Island


                              Fulweiler llc

                     By:      /s/ John K. Fulweiler
                              _____
                              John K. Fulweiler, Esq. (RI-7876)
                              W.B. Franklin Bakery Building
                              40 Mary Street
                              Newport, RI 02840
                              (401) 667-0977 -- Telephone
                              (401) 646-2501 – Facsimile
                              john@saltwaterlaw.com
                              www.saltwaterlaw.com
                              *Attorneys for Plaintiff*


- Of Counsel –

Ian F. Taylor, Esq.
LEWIS, KULLMAN STERBCOW & ABRAMSON, LLC
Pan American Life Center
601 Poydras Street #2615
New Orleans, LA 70130
*Attorneys for Plaintiff*